ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

IVANA DJAK (NYBN 5516687)
Assistant United States Attorney

     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-7157
     Fax: (415) 436-7027
     Ivana.Djak@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:23-MJ-71440 MAG |
| Plaintiff, | **UNITED STATES' MOTION TO REVOKE RELEASE ORDER AND TO EXTEND STAY OF RELEASE** |
| v. | |
| JOSHUA VICENTE LOPEZ | Court:   The Hon. Yvonne Gonzalez-Rogers |
| Defendant. | |

**NOTICE OF MOTION:** PLEASE TAKE NOTICE that, on October 12, 2023, or as soon thereafter as the matter may be heard, the United States will and hereby does appeal the Magistrate Judge's order releasing the Defendant pending trial in this matter, which order was issued on October 11, 2023, and moves this Court for entry of an order revoking the Magistrate Court's release order. *See* 18 U.S.C. § 3145. The Magistrate Judge's release order presently is stayed until October 12, 2023. If the Court cannot hear this emergency motion before that time, the United States further moves this Court to extend the stay of the Magistrate Judge's release order until such time as this motion may be heard.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3      On September 7, 2023, Defendant Joshua Vicente Lopez was arrested with 810.1 gross grams of

4  fentanyl, 113.2 gross grams of methamphetamine, cocaine base, and oxycodone pills, after SFPD

5  Officers observed him dealing on the corner of Seventh Street and Market Streets in San Francisco.  On

6  June 16, 2023, the Defendant was also arrested with 1306.2 grams of fentanyl, 93.2 grams of cocaine

7  base, and 21.9 grams of methamphetamine, near the corner of Eighth Street and Market Street, in San

8  Francisco.  During the June 16, 2023 arrest, Defendant fled on foot from CHP Officers conducting a

9  traffic stop, but only after Defendant attempted to put one of those Officers in a head lock.  These two

10  arrests, that involved over 2000 gross grams, or 2 kilograms, of fentanyl, occurred while Lopez had

11  several drug trafficking cases pending against him in San Francisco and while he was on probation in

12  Alameda County.

13      The Defendant is a professional fentanyl dealer.  He was convicted of a misdemeanor drug

14  trafficking offense in San Francisco in July 2020 (a Penal Code § 32 accessory after the fact arising from

15  a drug sales arrest).  In three short years—since 2020—he has been arrested fourteen times in the Bay

16  Area on drug trafficking offenses.  These facts were presented to the Magistrate Judge in the

17  government's detention memorandum filed on October 4, 2023, the day that Lopez was arraigned, and

18  again during a detention hearing on October 11, 2023.  *See* Dkt. 4.  The defendant filed no written

19  opposition.  These facts alone make clear that Lopez is a risk of non-appearance/flight and a danger to

20  the community.

21      The rebuttable presumption in favor of detention applies to this case, *see* 18 U.S.C.

22  § 3142(e)(3)(A), and the defendant cannot overcome it.  The bail report Pretrial Services prepared

23  revealed additional facts further demonstrating that there is no condition or combination of conditions

24  that can secure Defendant's appearance before the Court or provide for the safety of the community.

25  The government respectfully disagrees with Pretrial Services's conclusion that a $25,000 unsecured

26  bond and location monitoring will protect the public and assure Defendant's appearance given that

27  Defendant has historically disobeyed court orders and remains undeterred from engaging in illegal drug

28  trafficking.  For example, according to the bail report, there were three stay-away orders in place against

1    the Defendant ordering him to stay away from specific locations in the Tenderloin—the same general

2    locations where he was arrested for drug dealing on June 16, 2023, and September 7, 2023.  As a

3    professional fentanyl dealer, Defendant repeatedly came back to the Tenderloin to deal fentanyl and

4    other drugs.

5        The Defendant is a citizen of Honduras who faces serious charges—the most serious he has

6    faced to date—and deportation if he is convicted.  He has no verifiable employment.  He refused to

7    provide Pretrial Services with an address, although he claims to have lived in Oakland for the last five

8    years, and later his proposed sureties were able to provide an address for him, including admitting that

9    he has lived with them for three years.  He has used four aliases and an alternative birth date.  The

10   sureties the Defendant listed are his girlfriend's aunt and his girlfriend's sister—the same people he has

11   associated and lived with during his more than dozen arrests since 2020.  Neither these women, nor his

12   girlfriend with whom he shares a child, have been able to deter him from engaging in drug trafficking in

13   the time they have known him—they have not been able to exercise moral suasion over him up to this

14   point, and there is no evidence they will be able to do so in the future.  Indeed, given that Defendant has

15   no verifiable employment other than professional fentanyl dealing, there is a good argument that some

16   of the sureties are beneficiaries of the proceeds of his drug sales.

17       The Magistrate Judge was persuaded that Defendant could be successfully monitored by Pretrial

18   Services, in part, because one of the conditions of his release was that he would be subject to electronic

19   monitoring, a condition the Magistrate Judge believed Defendant had not been subject to in his previous

20   pre-trial releases and probations in state court.  The Magistrate Judge also believed that the Defendant

21   did not have a history of failing to appear for court hearings in San Francisco and Alameda Counties.

22   The Defendant presumably had personal knowledge about his prior conditions on pre-trial release, bench

23   warrants, and whether he had previously been subjected to electronic monitoring.  The Government has

24   since learned, and produced in discovery to the defense, that Defendant has on multiple occasions been

25   subject to electronic monitoring in state court proceedings and has repeatedly failed to appear in court

26   and failed to report to probation services in his state court cases.  In a presumption case such as this one,

27   the burden of production shifts to the defendant.  *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir.

28   2008).  Here, the Defendant failed to produce evidence to show that a combination of conditions could

1  secure his appearance in court.  Indeed, the information that the Government has since obtained helps to

2  correct the record and in this *de novo* review, further illustrates that Defendant should be detained.

3      The Defendant is both a danger to the community and a significant flight risk.  He remains

4  undeterred and will continue to deal fentanyl and evade law enforcement if given the chance.  Defendant

5  is not amenable to court supervision.  He cannot overcome the presumption that there is no condition or

6  combination of conditions that can secure his appearance before the Court or provide for the safety of

7  the community.  Accordingly, the government requests that he be detained pending trial.

8  ## II.   STANDARD OF REVIEW

9      On appeal of a magistrate judge's release order, this Court "should review the evidence before

10  the magistrate and make its own independent determination whether the magistrate's findings are

11  correct, with no deference." *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990).  The record

12  is not limited to those facts that were presented to the magistrate judge; rather, the Court should "make

13  its own 'de novo' determination of the facts," and the "ultimate determination of the propriety of

14  detention is also to be decided without deference to the magistrate's ultimate conclusion." *Id.* at 1193.

15      This Court can detain a defendant pretrial without bail where "no condition or combination of

16  conditions will reasonably assure the appearance of the person as required and the safety of any other

17  person and the community." 18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is

18  either a danger to the community or a flight risk. *Id.* at § 3412 (b), (c).  A finding that a defendant is a

19  danger to the community must be supported by clear and convincing evidence. *Id.* at § 3142(f)(2)(B).

20  A finding that a defendant presents a risk of non-appearance must be supported by a preponderance of

21  the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  The rules concerning

22  admissibility of evidence in criminal trials do not apply to a detention hearing. *See* 18 U.S.C.

23  § 3142(f)(2)(B).

24      The Court considers four factors to determine whether the pretrial detention standard is met: (1)

25  the nature and circumstances of the offense charged; (2) the weight of the evidence against the

26  defendant; (3) the defendant's history and characteristics, including his character, physical and mental

27  condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal

28  history, and record concerning appearance at court proceedings, as well as whether the crime was

committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

The law presumes that no condition or combination of conditions will reasonably assure the appearance of the defendant, and the safety of the community, when the defendant is charged with an offense under the Controlled Substances Act for which the maximum term of imprisonment is ten years or more.  18 U.S.C. § 3142(e)(3)(A).  In such cases, the burden of production shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).  Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors.  *See id.* (citation omitted).

### III.   DETENTION PROCEEDINGS

The defendant was transferred to federal custody on October 4, 2023, and made his initial appearance before the Magistrate Judge that day.  The government moved for pretrial detention and a hearing was set for October 11, 2023.  The government submitted an initial brief in support of its detention motion before the hearing on October 4, 2023.  *See* Dkt. 4.  The Defendant did not file an opposition brief.

The Magistrate Judge heard arguments on detention on October 11, 2023, and ultimately ordered Defendant released to his girlfriend's aunt house, on electronic location monitoring and a $25,000 unsecured bond co-signed by that same aunt and the Defendant's girlfriend's sister.  The Magistrate Judge made that decision after hearing testimony from the proposed sureties and the Defendant's girlfriend confirming that the Defendant has lived with his girlfriend and her aunt, as well as Defendant's toddler, for about three years, and that they all currently reside at the same address in Oakland.  The Magistrate Judge also emphasized that there was no information in the Pretrial Services report about probation or pre-trial release conditions the Defendant violated in his prior state court cases, or about any failures to appear in those same cases.  The Government offered to contact local law enforcement for additional information that the Pretrial Services bail report did not contain, and that the Defendant, who has the burden of production, failed to produce.  The Magistrate Judge declined to receive supplemental briefing.  After the detention hearing the Government learned that the Defendant

had indeed been subject to electronic monitoring in his state court cases and still failed to appear in court, and failed to meet with probation—all further evidence of his lack of amenability to pretrial supervision and indicative of risk of non-appearance.

The Government submits that even the relatively stringent release conditions imposed by the Magistrate Court are thus insufficient to safeguard the defendant's appearance in court for future proceedings in this case.  The same conditions have failed to safeguard Defendant's appearance in court in past proceedings.

## IV.    FACTUAL BACKGROUND & ARGUMENT

The government proffers facts herein in support of the argument that Lopez is a danger to the community and a flight risk through counsel.[1]  The government can supply additional documentation such as police reports and underlying records upon the Court's request.

### A.    September 7, 2023 – Defendant Sells Fentanyl in the Tenderloin.

As described in the Complaint, which is fully incorporated herein by reference, on September 7, 2023, SFPD Officers were conducting narcotics surveillance via CCTV camera in the area of Seventh Street and Market Street.  While observing the live feed, Officers saw a male, later identified as the Defendant, engage in a hand-to-hand sale of drugs.  They saw him remove his backpack and remove a scale and a white rock-sized object from his backpack.  They watched him weigh and place in a smaller plastic bag the white rock-like substance.  An unknown person gave the Defendant cash, and the Defendant handed the person the smaller plastic bag while counting the cash.  Officers concluded Defendant had sold the unknown person narcotics and arrested him.  Incident to Defendant's arrest, Officers searched his person and backpack.  Officers found $1,157 in US Currency and 4.5 grams gross of suspected Marijuana on Defendant's person.  From Defendant's backpack, Officers seized a variety of illegal narcotics that were individually wrapped in clear plastic bags.  The illegal narcotics included

---

[1] The Federal Rules of Evidence do not apply to pretrial detention hearings. *See* 18 U.S.C. § 3142(f)(2)(B) ("The Rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."); *see also* Fed. R. Evid. 1101(d)(3) (exception to application of federal evidence rules for "miscellaneous proceedings such as . . . considering whether to release on bail or otherwise.").  Defendants at pretrial detention hearings are expressly authorized by the Bail Reform Act of 1984 to "present information by proffer or otherwise." 18 U.S.C. § 3142(f)(2)(B).  Because the Act ratified existing practice, the government is likewise authorized to present information by proffer.

suspected fentanyl, suspected Methamphetamine, suspected Cocaine Base, and suspected Oxycodone pills.  Inside of the backpack Officers located a box full of new unused Glad plastic bags and a digital scale.  The seized narcotics were transported and TruNarc tested.  The suspected fentanyl weighed 810.1 grams gross and tested positive for the presence of fentanyl.  The suspected methamphetamine weighed 113.2 grams gross and tested positive for the presence of methamphetamine.  The suspected cocaine base weighed 5.1 grams gross and tested positive for the presence of cocaine base.  Pills of suspected oxycodone were also seized which weighed 10.2 grams gross and had the markings "M" on one side and "30" on the other.  When the Defendant was placed in handcuffs, he spontaneously stated in Spanish "What did I do?  Did I sell to a Narco?"

**B.      June 16, 2023 – Defendant Flees from CHP Officers.**

On June 16, 2023, at approximately 11:00pm, CHP Officers Kiepke and Arellano were on patrol in a marked CHP patrol vehicle.  They were driving in the area of Eighth Street, and Market Street.  Officer Kiepke observed a white Mercedes with expired registration tabs.  A registration check on the vehicle revealed the vehicle had expired registration as of January 2023, a violation of California Vehicle Code Section 4000(a)(1) – Expired Registration.  The vehicle also had the front windows tinted, a violation of California Vehicle Code Section 26708(a)(1) - Front window tint.  At this point, the CHP officers activated the forward red lights of their patrol vehicle to conduct an enforcement stop.  Officer Arellano used the Public address system to instruct the driver of the vehicle to stop inside the San Francisco CHP area office parking lot located to their left.  The driver of the vehicle complied and entered the parking lot.  Office Kiepke contacted the driver through an open driver side window and advised him of the reasons for the stop.  Officer Kiepke asked him for his driver's license, registration, and insurance.  The driver initially provided a false name but was later positively identified as Joshua Vicente Lopez.

While Officers talked with the Defendant, they observed he was extremely sweaty.  He told the Officers he was feeling sick and needed to leave.  Officers offered an ambulance to the Defendant multiple times but he refused.  The officers then called for a tow truck, conducted a pat-frisk search of the Defendant, and started an inventory search of the vehicle before it was towed.  Officer Kiepke observed a machete in the rear left floorboard, along with a black backpack in the middle of the rear

1   seat.  The Officers observed a white powdery substance all over the black backpack.  Officer Kiepke

2   opened the black backup to inventory the items within.  Upon opening the black backpack, Officer

3   Kiepke observed multiple baggies containing white rock-like substances, resembling fentanyl.

4       As Officer Kiepke looked at the Defendant, the Defendant suddenly ran in a southwesterly

5   direction towards the sidewalk of Eighth Street Street.  Officer Kiepke noted the Defendant changed

6   direction slightly and ran towards a brick "California Highway Patrol" sign located next to the parking

7   lot, facing vehicle traffic on Eighth Street.  Officer Kiepke observed Officer Arellano and the Defendant

8   against the brick wall.  Officer Kiepke suddenly observed the Defendant attempt to place his left arm

9   around Officer Arellano's head.  At this point, Officer Kiepke caught up to the both of them and

10  managed to get a hold of the Defendant's right hand as he continued to move away and try to free

11  himself from the Officers' grip.  After Officers told the Defendant to stop resisting, he gave them his

12  hands and Officers handcuffed him with no further incident.  During the detainment, two cell phones fell

13  out of the Defendant's pockets.  During a search incident to arrest, a large amount of money was also

14  located in his pockets.

15      Officer Kiepke then inspected the items located in Defendant's backpack.  Multiple small

16  baggies containing a rock-like substance, resembling Fentanyl, were located.  The backpack also

17  contained a separate baggie with a crystal-like substance, resembling Methamphetamine.  There were

18  more baggies containing a white rock-like substance, resembling Cocaine base.  The backpack also

19  contained a black and gray digital scale.  There was a bag with a green leafy substance, resembling

20  Marijuana.  The clear plastic bags with white rocks, was field tested, and presumptively tested positive

21  for fentanyl on a TruNarc Analyzer.  The item weight was 1306.2 grams.  The clear baggie with the

22  white rock, was field tested and presumptively tested positive for Cocaine base, using a TruNarc

23  Analyzer.  The weight of the item was 93.2 grams.  The clear plastic bags with the white crystal-like

24  rock, was field tested and presumptively tested positive for Methamphetamine using a TruNarc

25  Analyzer.  The item weight was 21.9 grams.

26      **C.    The Defendant is a Professional Fentanyl Dealer.**

27      This is not the first time the Defendant has been charged with a felony drug trafficking offense.

28  The Defendant has been arrested 14 times since June 2020 for drug trafficking.  The Defendant was

1   arrested for drug trafficking in San Francisco in June 2020; and again in March 2021 (with 80 gross

2   grams of fentanyl, and 27 gross grams of methamphetamine); and again in June 2021 (with 100 gross

3   grams of fentanyl and 30 gross grams of methamphetamine); and again in July 2021 (for hand-to-hand

4   narcotics sales involving suspected fentanyl and methamphetamine).  Then he branched out and was

5   arrested for drug trafficking in Oakland in August 2021.  But by May 2022 he was back to drug

6   trafficking in San Francisco; then Oakland again in October 2022; but then back to San Francisco in

7   February 2023 and August 2023.  He was again arrested for drug trafficking in Oakland in August and

8   September 2023.  And these are all previous arrests beyond the charged June 16, 2023, and September 7,

9   2023 conduct in the Tenderloin.  Defendant had five cases open in San Francisco at the time of his

10  federal arrest on September 7, 2023.  There was also an outstanding arrest warrant in Alameda County

11  for a probation violation.  These cases were dismissed by local district attorneys' offices in lieu of the

12  filing of this federal prosecution.

13                          **V.    <u>ARGUMENT</u>**

14          **A.   The Defendant Faces a Rebuttable Presumption in Favor of Detention.**

15          The Defendant was repeatedly arrested in actual physical possession of fentanyl and

16  methamphetamine.  He is charged with possessing with intent to distribute fentanyl and

17  methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C).  On September 25, 2023, the

18  Honorable Judge Peter H. Kang signed the criminal complaint.  Therefore, there is probable cause to

19  believe the Defendant committed an offense for which a maximum term of imprisonment of ten years or

20  more is prescribed in the Controlled Substances Act.  As a result, there is a rebuttable presumption that

21  no condition or combination of conditions will reasonably assure the appearance of the person as

22  required and the safety of the community.  *See* 18 U.S.C. § 3142(e)(3)(A).  As described below, the

23  defendant will be unable to overcome this presumption.

24          **B.   The Defendant Cannot Overcome the Presumption that He is a Flight Risk.**

25          The Defendant is a foreign national with no known local ties.  The Defendant is not a United

26  States citizen and faces deportation if convicted.  His criminal history of numerous arrests for drug

27  trafficking while on pre-trial release shows that he is not deterred by court orders and supervision.

28  Perhaps most tellingly, he tried to evade law enforcement during one of his most recent arrests.  He ran

1    from officers and tried to put one in a head lock.

2        Additionally, the charges brought against the Defendant are serious—the most serious he has

3    faced.  He faces a significant sentence if he is convicted.  Additionally, the evidence against the

4    defendant is very strong, including several Officers witnessing the Defendant selling drugs in the

5    Tenderloin on June 16, 2023, and September 7, 2023.  *See United States v. Gebro*, 948 F.2d 1118, 1122

6    (9th Cr. 1991) (holding that strong evidence of guilt "makes it more likely that he will flee").  All of

7    these factors, when taken together, demonstrate that the Defendant poses a significant flight risk.

8        **C.   Defendant Cannot Overcome the Presumption that He is a Danger to the**

9              **Community.**

10       The defendant is a significant danger to the community.  The defendant is a recidivist fentanyl

11   trafficker, who will continue to sell lethal fentanyl on the streets of San Francisco if he is released.  He

12   has been arrested 14 times in the Bay Area since 2020, mostly related to drug trafficking of fentanyl and

13   methamphetamine.  He has continued to deal drugs while on pre-trial release in several of those cases.

14   Just two milligrams of fentanyl can kill.  The Defendant possessed close to 2000 gross grams of

15   fentanyl, a large amount of an incredibly lethal substance.  And that just accounts for the two incidents

16   charged in this case, not the series of other arrests and pending cases described above.  He possessed

17   these drugs despite court orders and supervision.  The Defendant will continue to sell dangerous drugs if

18   he is released from custody.

19       **D.   Defendant Repeatedly Violated the Terms of His Pre-Trial Release and Probation**

20       One of the factors the Magistrate Judge seems to have considered in ordering Lopez released, is

21   that he was not previously placed on electronic location monitoring, that he did not have a previous

22   record of failing to appear in court and of violating the terms of any supervised release.  No such

23   information was provided to the Magistrate Judge in the Pretrial Service bail report.  The Government

24   has now received information from the San Francisco District Attorney's Office and the Alameda

25   County District Attorney's Office that Defendant <u>was actually repeatedly placed on electronic</u>

26   <u>monitoring</u>, <u>failed to appear</u>, <u>and had bench warrants issued for his arrest as a result of those failures to</u>

27   <u>appear</u>.  For example, on August 5, 2021, the Defendant was placed on pre-trial monitoring by the San

28   Francisco Sheriff's Office and was fitted with a GPS tracking device.  But by August 17, 2021,

1  Defendant failed to appear and a bench warrant was issued for his arrest.  And again, on May 12, 2022,

2  the Defendant was placed on pre-trial monitoring and fitted with a GPS device.  By May 31, 2022, he

3  had failed to appear and a bench warrant was issued on June 3, 2022.  Just recently on August 10, 2023,

4  the Defendant was again a no-show and failed to appear at another court date in San Francisco Superior

5  Court, and a bench warrant was issued for his arrest.  These are just a few instances highlighting

6  Defendant's failure to comply with court orders.

7       The Defendant was no more capable of following court orders in Alameda County.  There

8  Defendant pleaded no contest to a drug charge in February 2023 and was places on probation.  The

9  terms of his probation included meeting with his Probation Officer.  By July 2023, Defendant had

10  repeatedly failed to meet with his Probation Officer.  At that point the Alameda County Probation

11  Officer filed a petition to revoke Lopez's probation and a no bail arrest warrant was issued.  On August

12  14, 2023, Lopez was again released on his own recognizance, and ordered to meet with his Probation

13  Officer within five days.  But by September 20, 2023, Lopez again failed to appear in court and a no-bail

14  warrant was issued.  These failures to comply with court orders, and Defendant's history of continued

15  drug dealing while on supervised pre-trial release, highlight that there is no combination of conditions

16  that will ensure Lopez's appearance in court, and that will stop him from dealing deadly fentanyl in the

17  Tenderloin.

18                                **VI.    CONCLUSION**

19       The Defendant cannot show that he is not a flight risk *or* that his release will not endanger the

20  community (let alone both) given the presumption.  And the government has more than shown by the

21  relevant standards of proof that Defendant is, in fact, a severe flight risk and also a continuing danger to

22  the community.  Accordingly, he cannot overcome the presumption that he should be detained. *See* 18

23  U.S.C. § 3142(e)(3)(A).  For the foregoing reasons, the Government respectfully requests that the Court

24  revoke the Magistrate Court's release order and detain the defendant pending trial due to his being a

25  serious risk of flight and a danger to the community.

26

27

28

1    DATED:  October 11, 2023                    Respectfully submitted,

2                                                ISMAIL J. RAMSEY
                                                 United States Attorney
3

4
                                                  _/s/ Ivana Djak_____
5                                                IVANA DJAK
                                                 Assistant United States Attorney
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28