ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

IVANA DJAK (NYBN 5516687)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3918
    FAX: (510) 637-3724
    ivana.djak@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSHUA VICENTE LOPEZ, <br><br> Defendant. | CASE NO. 23-CR-360 JD <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Court:         Hon. James Donato <br> Hearing Date:  July 22, 2024 <br> Hearing Time:  10:30 A.M. |

## I.     INTRODUCTION

The defendant, Joshua Vicente Lopez, is a fentanyl dealer who primarily worked the block between Seventh Street and Market Street in San Francisco. On April 15, 2024, the defendant pled guilty to Counts One through Four (Possession with Intent to Distribute Fentanyl, and Possession with Intent to Distribute Methamphetamine) of the Indictment. *See* Dkt. 21, Indictment; Dkt. 34, Plea Agreement ("Plea") ¶ 1; Dkt. 37, Presentence Report ("PSR") ¶ 3. Sentencing is set for July 22, 2024.

On September 7, 2023, the defendant was arrested by San Francisco Police Department ("SFPD") officers with 176.69 net grams of fentanyl, 106.81 net grams of methamphetamine, 3.63 net grams of cocaine base, and oxycodone pills, after the officers observed him dealing on the corner of Seventh Street and Market Street. Plea ¶ 2; PSR ¶ 7. On June 16, 2023, the defendant was arrested by California Highway

Patrol ("CHP") officers with 432 net grams of fentanyl, 20.61 net grams of methamphetamine, and 27.55 gross grams of cocaine base, near the corner of Eighth Street and Market Street, in San Francisco. During the June 2023 arrest, the defendant fled on foot from CHP officers and engaged officers in a physical struggle. Plea ¶ 2; PSR ¶ 8. These two arrests occurred while the defendant was on pre-trial release and probation in San Francisco and Alameda Counties on numerous drug trafficking cases. PSR ¶¶ 30–37.

The defendant's conduct is serious and warrants a term of incarceration. Based on the nature and circumstances of the offense, the defendant's criminal history, and the defendant's acceptance of responsibility, the government submits that a custodial sentence of 47 months' imprisonment to be followed by three years of supervised release, is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a).

## II.   OFFENSE CONDUCT

On September 7, 2023, at about 8:30 p.m., near Seventh Street and Market Street in the Tenderloin District of San Francisco, SFPD officers observed the defendant engage in several hand-to-hand drug sales and arrested him. When officers searched the defendant and his possessions, including his backpack, they found the following: $1,157 in U.S. Currency and 4.5 gross grams of suspected Marijuana on his person and, in his backpack, a variety of illegal narcotics that were individually wrapped in clear plastic bags for future sale. The illegal narcotics included fentanyl, methamphetamine, cocaine base, and oxycodone pills. Inside of the backpack officers also located a box full of new, unused Glad plastic bags and a digital scale. The drugs seized on this date were subsequently weighed and were confirmed to be the following controlled substances: 176.69 net grams of fentanyl, 106.81 net grams of methamphetamine, and 3.63 net grams of cocaine base. The defendant has admitted that he knew that each substance was a federally controlled substance and that he possessed each of these substances with the intent to distribute them to other persons. Plea ¶ 2; PSR ¶ 7.

On June 16, 2023, at about 11:00 p.m., the defendant was driving a white Mercedes with expired registration tabs (in violation of California Vehicle Code Section 4000(a)(1)) and tinted front windows (in violation of California Vehicle Code Section 26708(a)(1)), near Eighth and Market Streets in San Francisco. CHP officers were on patrol nearby and pulled him over to conduct a traffic stop. As a result of the stop, officers conducted an inventory search of his vehicle before towing it. Officers observed a

machete in the rear left floorboard, along with a black backpack in the middle of the rear seat. The officers observed a white powdery substance (consistent with drugs) all over the black backpack. Officers opened the black backpack up to inventory the items within and observed multiple baggies containing white rock-like substances. As officers started to search the vehicle and the defendant's backpack, he fled on foot, first towards the sidewalk of Eighth Street, then towards a brick "California Highway Patrol" sign located next to the parking lot, facing vehicle traffic on Eighth Street. The officers ran after the defendant, one of them caught up to him, and the defendant engaged in a physical struggle with the officer. The defendant struggled to free himself as the officers tried to detain him. During the struggle, two cell phones fell from his pockets. The defendant was eventually arrested without further incident. During a search incident to arrest, a large amount of money was also located in the defendant's pockets. The officers then continued the search of the defendant's backpack. His backpack contained multiple small baggies containing a rock-like substance, resembling fentanyl, a separate baggie with a crystal-like substance, resembling methamphetamine, and more baggies containing a white rock-like substance, resembling cocaine base. The backpack also contained a black and gray digital scale. There was a bag with a green leafy substance, resembling marijuana. The drugs seized on this date were subsequently weighed and were confirmed to be the following controlled substances: 432 net grams of fentanyl, 20.61 net grams of methamphetamine, and 27.55 gross grams of cocaine base. The defendant has admitted that he knew that each substance was a federally controlled substance and that he possessed each of these substances with the intent to distribute them to other persons. Plea ¶ 2; PSR ¶ 8.

**III.     PROCEDURAL HISTORY**

On October 17, 2023, a four-count Indictment was filed against the defendant alleging violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) – Possession with Intent to Distribute Fentanyl (Counts One and Three); and 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) – Possession with Intent to Distribute Methamphetamine (Counts Two and Four). There is also a forfeiture allegation pursuant to 21 U.S.C. § 853(a). *See* Dkt. 21. On April 15, 2024, the defendant pled guilty to all four counts of the Indictment. *See* Dkt. Nos. 34, 36. Sentencing is set for July 22, 2024 at 10:30 a.m.

## IV. SENTENCING GUIDELINES CALCULATION

The parties agreed to a plea agreement resulting in an adjusted offense level of 27. The government agreed to recommend a sentence no higher than that associated with a 16-month downward variance from the bottom of the range associated with an offense level of 27. The calculation is as follows.

    a. Possession with Intent to Distribute (base offense level 30 (U.S.S.G. § 2D1.1(c)(5)). There are no specific offense characteristics.

The three levels deducted for Acceptance of Responsibility pursuant to U.S.S.G. § 3E1.1, result in an Adjusted Offense Level of 27.

The parties also agreed that a two-level reduction, *see* U.S.S.G. § 2D1.1(b)(18), would be appropriate if the defendant satisfied the requirements of U.S.S.G. § 5C1.2 at the time of sentencing, and the government agrees that the defendant has satisfied the requirements. Accordingly, the final Adjusted Offense Level is 25. The Defendant's criminal convictions result in a criminal history category II. PSR ¶ 29. This results in a guideline range of 63 to 78 months. *Id.* ¶ 61. The Probation Office agrees with these calculations. *Id.* ¶¶ 4, 61.

Pursuant to the plea agreement, and as detailed below, the government recommends a sentence of 47 months—16 months below the low end of the range contemplated for an Adjusted Offense Level of 25.

## V. APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Id.* at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)     the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4)     the need for the sentence to protect the public from future crimes of the defendant;

(5)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6)     the need to provide restitution to any victims of the offense.

## VI.     RECOMMENDED SENTENCE AND SECTION 3553(a) FACTORS

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a custodial sentence of 47 months' imprisonment, commensurate with an Adjusted Offense Level of 25 and a CHC II.

The nature and circumstances of the defendant's offenses are serious. The defendant was observed dealing drugs, and he possessed large quantities of fentanyl and other controlled substances. The block between Seventh Street and Market Street, where the defendant primarily dealt, is home to a federal office building, a federal courthouse, a preschool, a methadone clinic, and a health resource center. This area has suffered from an increase in criminal activity including drug trafficking. Of particular concern is the fentanyl trafficking taking place in this block. There were approximately 810 accidental overdose deaths in San Francisco in 2023. It only takes two milligrams of fentanyl to kill a person.[1] The defendant possessed over 608 net grams of fentanyl.

And the present case reflects only a part of the defendant's drug trafficking conduct. The defendant has a felony drug trafficking conviction in Alameda County from February 2023, and a misdemeanor drug trafficking conviction in San Francisco County from July 2020. He was sentenced to one day of prison and two years of probation in both cases. PSR ¶¶ 26–27. Between those convictions, the defendant was arrested in Oakland and San Francisco at least twelve times for conduct ranging from drug trafficking to robbery. *Id.* at ¶¶ 30–43.

A term of incarceration is necessary to reflect the gravity of the defendant's conduct and criminal

---

[1] *See CA Overdose Dashboard*, available at https://skylab.cdph.ca.gov/ODdash/?tab=CTY.

23-CR-360 JD      5

history, and to deter others from engaging in drug trafficking in the Tenderloin.  A term of 47 months will be the defendant's longest period of incarceration to date, and is sufficient to send a specific and general deterrence message.

The government acknowledges that the defendant lost his father to leukemia when he was 15 years old, and that his family subsequently endured poverty.  PSR ¶¶ 45–47.  The government also notes that the defendant is a young man and has a two-year-old daughter.  *Id*. at ¶ 48.  The government is hopeful that the defendant will avail himself of educational and mental health resources while in BOP custody, and subsequently rejoin society and his family as a productive and law-abiding person.  The defendant has also taken responsibility for his actions in this case and has thus saved the government considerable resources.

The governments' recommendation of a custodial sentence of 47 months imprisonment takes all the above aggravating and mitigating factors into account.  A 47-month sentence is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553.

## VII.   SUSPICIONLESS SEARCH CONDITION

Additionally, the government respectfully requests that the Court impose a suspicionless search condition as part of the defendant's terms of supervised release.  It is "well-established" that "conditional releasees are not entitled to the full panoply of rights and protections possessed by the general public" and in fact "enjoy severely constricted expectations of privacy relative to the general citizenry."  *United States v. Kincade*, 379 F.3d 813, 833–34 (9th Cir. 2004) (en banc) (citations omitted); *see also United States v. Kriesel*, 508 F.3d 941, 950 (9th Cir. 2007) (noting that those on supervised release have "diminished privacy interests").  Courts thus regularly uphold supervised release conditions that permit searches without a warrant and without reasonable suspicion.  *See, e.g.*, *Samson v. California*, 547 U.S. 843, 855–57 (2006) (analogizing state parole to federal supervised release and holding that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee"); *United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007) (noting "[t]here is no sound reason for distinguishing parole from supervised release with respect to [suspicionless search conditions]").  District courts are well within their discretion to impose suspicionless search conditions.  *See Betts*, 511 F.3d at 876.

In this case, the defendant was arrested at least a dozen times over the course of just three years,

mostly for conduct related to drug trafficking. He has two prior drug trafficking convictions. He was on pre-trial release and parole when the conduct of conviction in this case occurred. He has a history of supervised release violations. PSR ¶ 37. In *Cervantes*, the Ninth Circuit affirmed a suspicionless search condition in a case where the defendant had a similar record of recidivism and supervised release violations. Cervantes had a lengthy criminal history, a history of violating previously imposed terms of supervision, and committed the offense while on supervision. The Court found that these facts "justified the district court's belief that Cervantes posed an exceptionally high risk of re-offending during his term of supervised release, and that subjecting him to suspicionless searches would be necessary to mitigate that risk." *Cervantes*, 859 F.3d at 1184. Probation agrees that a suspicionless search condition is appropriate in this case. *See* PSR at 23.

DATED: July 8, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*Ivana Djak*

Ivana Djak
Assistant United States Attorney